# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| ZO SKIN HEALTH, INC., a corporation,<br><br>         Plaintiff,<br><br>vs.<br><br>KELLY DUFFY-BUCKNER,<br><br>         Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF, FOR VIOLATION OF 15 USC § 1114; 15 USC § 1125(a); 15 USC § 1125(c) AND RELATED CLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ZO Skin Health, Inc., ("ZO Skin Health") hereby complains against Kelly Duffy-Buckner ("Defendant") as follows. All allegations in this Complaint are based on ZO Skin Health's best information and belief.

## NATURE OF THE ACTION

1.     This action arises out of Defendant's sale of ZO Skin Health, Inc.'s trademarked medical products without authorization. Plaintiff ZO Skin Health Inc. maintains strict quality control measures for his products that were violated by the unauthorized, online sales. The products at issue are sold only to persons under the care of a physician. ZO Skin Health discovered that Defendant, Kelly Duffy-Buckner, who is employed by a competitor, Obagi Medical Products, bought up the stock of a physician authorized by ZO Skin Health, and then sold the products

on eBay in breach of Zo Skin Health's contract with its authorized physician and in violation of state and federal law.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff ZO Skin Health is a corporation, organized under the existing laws of the State of California, with its principal place of business located in Irvine, California.

3.      Kelly Duffy-Buckner is a natural person residing at 645 Oak Farm Lane, Alpharetta, Georgia, 30004.

4.      Defendant has been employed by ZO Skin Health's direct competitor, Obagi Medical Products ("OMP"), since 2007.

5.      While employed at OMP, Defendant applied for a sales position within ZO Skin Health.

6.      ZO Skin Health interviewed Defendant for potential employment. During this interview process, ZO Skin Health provided Defendant with a copy of its policies and procedures, which clearly stated that the unauthorized sale of ZO Skin Health products on the Internet is prohibited.

7.      In the interview process, ZO Skin Health also informed Defendant about the requirement that ZO Skin Health products be used under the care of a licensed physician.

8.     ZO Skin Health also informed Defendant of its policy to buy out and destroy any inventory of a competitor's product when entering into an agreement for a new distributor to sell ZO Skin Health products exclusively.

9.     Rather than pursuing employment with ZO Skin Health, Defendant took a promotion to a different sales position within OMP.

10.     Defendant is currently employed at OMP as a Senior Sales Executive for the Greater Atlanta Area.

11.     The Court has federal question jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1331 because this is a civil action that arises under the Constitution and laws of the United States; the provisions of 28 U.S.C. § 1338 because this is a civil action arising under an Act of Congress relating to trademarks; and the provisions of 15 U.S.C. § 1114 and 15 U.S.C. § 1125.

12.     The Court has supplemental jurisdiction over the state-law claims of ZO Skin Health pursuant to the provisions of 28 U.S.C. § 1367.

13.     Venue is proper in this District and this Division under, without limitation, 28 U.S.C. §§ 1391(b)(2) & (3) because a substantial part of the events or omissions giving rise to the claims occurred in this District and this Division and the Defendant are subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### *ZO Skin Health & Its Trademarks*

14.    ZO Skin Health develops and sells high-end skin care products developed through the use of cutting-edge science and the extensive clinical experience of its medical director, Dr. Zein Obagi.

15.    ZO Skin Health devotes a significant amount of time, energy, and resources toward protecting the value of its brand, products, name, and reputation. Each product is packaged so that the ZO Skin Health brand is easily and readily identifiable.  Furthermore, each product is handled with the utmost care and precision during the packaging and transport process.  In the highly competitive skin care market, quality is a fundamental part of the consumer's decision to purchase a product.

16.    ZO Skin Health has registered several trademarks with the United States Patent and Trademark Office with respect to its line of prescription-grade medical products, including but not limited to: "Balatone"®,  registration no. 4369426; "Brightenex"®,  registration no. 4369427; "Cebatrol"®,  registration no. 4700117; "Glycogent"®,  registration no. 4314219; "Melamin"®,  registration no. 4369429; "Melamix"®,  registration no. 4403996; "Normacleanse"®, registration no. 4369425; "Oilacleanse"®,  registration no. 4314218; "Retamax"®, registration

no. 4369428; "Brightamax"®, registration no. 41717108, "Restoracalm"®, registration no. 4717109; and "ZO Medical"®,  registration no. 4318377 (collectively, the "ZO Medical Trademarks").

17.    ZO Skin Health also has registered trademarks with the United States Patent and Trademark Office used in connection with various products, including, but not limited to, its prominent trademark, "ZO"®, registration no. 3443712 ("ZO Trademark").

18.    The registration for each of the ZO Medical Trademarks is valid, subsisting and in full force and effect.  Further, pursuant to 15 U.S.C. § 1065, the ZO Medical Trademarks serve as conclusive evidence of ZO Skin Health's ownership of the marks and of its exclusive rights to use the marks in commerce and in connection with the sale and distribution of ZO Skin Health's products identified in the registrations, as provided by 15 U.S.C. § 1115(b).

19.    ZO Skin Health actively uses and markets all of the ZO Medical Trademarks in commerce.

20.    Due to the quality and exclusive distribution of ZO Skin Health's products, and because ZO Skin Health is uniquely recognized as the source of these high quality products, the ZO Medical Trademarks have enormous value.

### *ZO Skin Health Production, Distribution, and Quality Control*

21.    Due to the professional grade of its products, ZO Skin Health exercises strict quality control over the production and distribution of its skin care products.  Each product contains a universal product code ("UPC"), batch code and date affixed to the packaging or container of the product, which play an important role in prevention of counterfeiting.  Because of the high expense involved in placing a unique number on each unit, counterfeiters will generally either omit such information from their packaging or repeatedly use sets of fake numbers on a series of counterfeit units.  The UPC system, therefore, facilitates the spotting of counterfeit units by allowing an investigator to make a determination based on the absence of a UPC on the packaging or the use of a fake UPC number.

22.    The UPC, batch code and date also assist ZO Skin Health's ability to protect its brand against quality slippage in genuine products.  When a quality problem surfaces, the UPC identifies the place of manufacture, the batch in which the defect was found, and other identifying information.  This information can help ZO Skin Health to recall those distributed products that may share the defect and to prevent further recurrence of the defect.   In light of the possibility for an adverse reaction with respect to any topical skin product, it is critical for ZO Skin Health to

have the ability to take measures to control the quality and integrity of its products, and the value of its trademarks.

23.     ZO Skin Health also provides consumers of ZO Skin Health products through its legitimate chains of distribution with warranties to ensure the safe and effective use of ZO Skin Health products.

24.     ZO Skin Health also maintains its quality controls by limiting the sale of its products to authorized distributors, physicians, and a limited number of other entities authorized to sell ZO Skin Health products.

25.     ZO Skin Health maintains its exclusive relationship with authorized distributors because the products it produces are medical grade and used to treat skin diseases and serious skin conditions.

26.     ZO Skin Health products contain potent chemicals, such as retinoic acid, to stabilize, care for and cure various skin diseases and ailments.  In order for them to be effective, and most importantly safe, the products must be administered by healthcare professionals, and according to unique protocols to correct medical skin conditions.

27.     The products developed by ZO Skin Health are designed to work together for specific skin conditions.  When not used properly, under the care of a

healthcare professional, the products may be ineffective or have negative effects on a patient's skin condition.

28.    ZO Skin Health's authorized distributors receive and review a series of manuals that contain the protocols for administrating ZO Skin Health products, and only after reviewing them do the distributors instruct the patients on how the products should be used, when they should be used, and under what circumstances to apply treatment.

29.    For instance, ZO Skin Health's Pigmentation System for treatment of hyperpigmentation and melasma includes six steps and four optional steps involving ten different products with specific directions for the use of each product.  In order to properly treat hyperpigmentation, and avoid unwanted and unplanned side effects, an authorized distributor must follow ZO Skin Health's quality controls and protocols and must instruct the patient to precisely follow each step.

30.    Further, the strength of ZO Skin Health's Pigmentation System can be controlled by adjusting the amount of products used by the patient and the frequency of their application.

31.     Similarly, ZO Skin Health also has a line of products named "ZO Medical" that are sold in conjunction with a physician supervised skin health program.

32.     ZO Skin Health maintains quality control over its ZO Medical products by limiting the sale of these products to authorized physician practices.

33.     ZO Medical products are only available for purchase by a consumer after he or she has consulted with an authorized physician practice.

34.     The ZO Medical products include, but are not limited to, BALATONE® Calming Toner pH Balancer, BRIGHTENEX® Skin Brightener & Correcting Crème Non-Hydroquinone, CEBATROL® Oil Control Pads, GLYCOGENT® Exfoliation Accelerator, MELAMIN® Skin Bleaching & Correcting Crème, MELAMIX® Skin Lightener & Blending Crème, NORMACLEANSE® Cleanser for Normal to Dry Skin, OILACLEANSE® Cleanser for Normal to Oily Skin, RETAMAX® Active Vitamin A Micro Emulsion, INVISAPEEL® Intensive Resurfacing Peel, TRETINOIN Tretinoin USP, HYDRAFIRM® Eye Brightening Repair Crème, C-BRIGHT® 10% Vitamin C Serum, and ZO® CONTROLLED DEPTH PEEL®.

35.     Medical supervision and instruction regarding the use of these products is fundamental to the quality of these products.   For instance, within this

line of products, ZO Skin Health has two medical products – Melamin and Melamix – that contain hydroquinone.  Hydroquinone is a potent chemical that typically requires a prescription.   Because Melamin and Melamix contain hydroquinone, the quality of these products depends on the dosage amount for these products being properly prescribed and conveyed by a licensed physician. The quality of Melamin and Melamix also depends on licensed physicians evaluating whether the patient has any allergies that could affect the impact of these products, whether the patient is of sufficient age to use these products, and whether the use of the products is safe and appropriate for the patient.  Because all of these factors are important to the quality of the products being offered by ZO Skin Health, ZO Skin Health goes to great effort to ensure that these products are only sold to patients by those who are trained to appropriately prescribe and monitor the use of these products.   Any interference with these processes materially alters the quality of the products, and thus, not only infringes upon ZO Skin Health's trademarks, but puts the consumers at risk.

### *ZO Skin Health Polices The Sale Of Its Products On The Internet*

36.     Due in part to the egregious conduct of Defendant and others, and in light of the significant problem ZO Skin Health has encountered with respect to the

illegal sale of its products on the Internet, ZO Skin Health polices the sale of its products on the Internet.

37.    Specifically, ZO Skin Health marks selected products from several orders with invisible ink in order to track and identify the products in the order, and also purchases products from online retailers with a significant Internet presence to locate the source of the products.

38.    Upon information and belief, in or about March 2015, Defendant began selling ZO Skin Health products, including ZO Medical products, on the Internet on the website www.ebay.com ("eBay") under the username "40wildcat" in violation of the ZO Medical Trademarks, and the distribution agreements that ZO Skin Health maintains with its authorized distributors.

39.    Immediately prior to "40wildcat" listing ZO Skin Health products for sale on eBay, ZO Skin Health lost a contract with a Georgia-based authorized distributor.  Upon information and belief, the authorized distributor still had in its possession numerous unsold ZO Skin Health products, including unsold ZO Medical products.

40.    Furthermore, upon information and belief, it is against OMP's policies for its customers to carry a competitor's line of skin care products so that OMP,

like ZO Skin Health, will also buy out a competitor's products when it engages a distributor.

41.    Since March 2015, Defendant has had no less than ten different ZO Skin Health and ZO Medical products of varying quantities for sale on eBay. These products include Brightamax, Retamax, C-Bright, Oraser Body Emulsion, Ossential Advanced Radical Night Repair, Ommerse Daily Renewal Crème, Olluminate Intense Eye Repair, Ossential Daily Power Defense, Ossential Growth Factor Serum, and Ommerse Overnight Recovery Crème.

42.    On May 6, 2015, ZO Skin Health initiated a purchase of the ZO Medical product "C-Bright" from "40wildcat."

43.    Due to the information provided by the PayPal account associated with "40wildcat," the seller was preliminarily identified as Daren Buckner, with a primary residence at 645 Oak Farm Lane, Alpharetta, Georgia.

44.    Based on the return address from the purchased product's packaging, the seller was verified as the Defendant, Kelly Duffy, with a primary residence at 645 Oak Farm Lane, Alpharetta, Georgia (see below):



45.    Upon information and belief, Defendant and Daren Buckner are married and reside together at 645 Oak Farm Lane in Alpharetta, Georgia.

46.    Upon information and belief, Defendant acquired a new customer, the aforementioned Georgia-based authorized distributor, and demanded that it hand over all competitor products, including ZO Skin Health and ZO Medical products.

47.    Upon information and belief, instead of destroying the ZO Skin Health and ZO Medical products that she received through the buy-back, Defendant sold the ZO Skin Health and ZO Medical products on eBay for personal profit.

### Defendant's Unauthorized Sale of ZO Medical Products
### in Violation of the ZO Medical Trademarks

48.    Defendant, without authorization from ZO Skin Health, sold products bearing the ZO Medical Trademarks on the Internet through eBay's website.

49.    The products that Defendant sold bearing the ZO Medical Trademarks were materially different than genuine ZO Skin Health products.

50.    Indeed, Defendant sold ZO Medical products that were not in fact genuine ZO Medical products because the ZO Medical products were sold without any of ZO Skin Health's quality controls, any of ZO Skin Health's skin care program instructions, any physician evaluation or monitoring, or any of the warranties offered by ZO Skin Health through its legitimate chains of distribution.

51.    Specifically, Defendant sold ZO Medical products without requiring the consumer to first consult with an authorized physician practice.

52.    As a result, by her unauthorized use of the ZO Medical Trademarks, Defendant was misleading consumers into believing that they were purchasing products with the same quality controls as ZO Medical products; however, in reality, the products that she was selling with the ZO Medical Trademarks were materially different from genuine and authentic ZO Medical products.

53.    Each consumer that purchased a ZO Skin Health product supplied by Defendant was deceived because not a single consumer received ZO Skin Health's

established quality controls, the proper instructions related to the use of the product, or the warranties that ZO Skin Health offers its customers through the authorized chains of distribution.

54.     In addition to Defendant's clear deception of consumers, Defendant falsely identified the source of the ZO Medical products that she was selling.  As is evidenced by her total failure to disclose in the product descriptions that the distributors were not authorized retailers of ZO Medical's products—Defendant actively concealed her identity and caused the products she sold to be shipped and diverted in furtherance of this subterfuge.

### *Defendant's Illegal Sale of ZO Medical Products*

55.     Without authorization from ZO Skin Health, Defendant sold products bearing the ZO Medical Trademarks on the Internet.

56.     As a result, by its unauthorized use of the ZO Medical Trademarks, Defendant was misleading consumers into believing they were purchasing products with the same quality controls as ZO Medical products; however, in reality, the products that Defendant was selling with the ZO Medical Trademarks were materially different from genuine and authentic ZO Medical products.

### *Defendant's Unauthorized Advertisement of ZO Medical Products Using the ZO Medical Trademarks*

57.     Defendant also misled consumers by promoting and/or permitting the unauthorized use of the ZO Medical Trademarks to advertise the sale of products on the Internet.

58.     Defendant utilized the ZO Medical Trademarks in an effort to capitalize on the goodwill that ZO Skin Health has developed and maintained.

59.     Defendant's use or consent to the use of the ZO Medical Trademarks in commerce without ZO Skin Health's consent likely deceived and confused distributors and consumers and/or resulted in mistake because it suggested that the products offered for sale by Defendant originated from, or were sponsored, authorized, affiliated, or otherwise connected with ZO Skin Health.

60.     Defendant's unauthorized sale of products with the ZO Medical Trademarks, and the use of the ZO Medical Trademarks in advertising, infringed upon and damaged the ZO Medical Trademarks and also interfered with ZO Skin Health's existing and potential business relations by diverting current and potential patients and consumers to purchase ZO Medical products at unauthorized, discounted prices.

*ZO Skin Health Has Suffered Significant Harm*

61.   ZO Skin Health has suffered significant monetary damages from Defendant's actions including, but not limited to, loss of sales for ZO Skin Health products, including ZO Medical products, trademark infringement, and damage to its existing and potential business relations.

62.   ZO Skin Health has suffered, and will continue to suffer, irreparable harm to its quality control procedures, the ZO Medical Trademarks, and its business relationships with legitimate distributors.   As a result of Defendant's actions, ZO Skin Health's legitimate distributors are more likely to terminate their agreements to sell ZO Skin Health's products.

63.   ZO Skin Health has also suffered, and will continue to suffer, irreparable harm to its quality control procedures, the ZO Medical Trademarks, and its good-will based upon Defendant's actions.

64.   Defendant's conduct was knowing, intentional, willful, malicious, wanton and contrary to law.

65.   ZO Skin Health is entitled to injunctive relief because Defendant will otherwise continue to unlawfully sell and allow the sale of ZO Medical products in violation of the ZO Medical Trademarks; sell ZO Medical products outside regular distribution channels compromising quality control; cause irreparable harm to ZO

Skin Health's good-will; and cause ZO Skin Health and its distributors to lose business.

66.    Defendant's willful violations of the ZO Medical Trademarks and this continued pattern of conduct demonstrate an intent to harm ZO Skin Health and have inflicted immense harm.

**FIRST CAUSE OF ACTION**
**Trademark Infringement – ZO Medical Trademarks**
**15 U.S.C. § 1114**

67.    ZO Skin Health re-alleges the allegations set forth in paragraphs 1-66 above, and incorporates each allegation herein by reference.

68.    The ZO Medical Trademarks are valid and subsisting trademarks in full force and effect.

69.    Defendant willfully and knowingly used the ZO Medical Trademarks in commerce in connection with the sale of ZO Skin Health products.

70.    The use of the ZO Medical Trademarks in connection with the sale of ZO Skin Health products by Defendant was likely to cause confusion, cause mistake, or deceive because it suggested that the products offered for sale by Defendant were genuine and authentic ZO Skin Health products.

71.    The products sold by Defendant were not, in fact, genuine and authentic ZO Skin Health medical products.  The products sold by Defendant were

materially different because, among other reasons, the products sold by Defendant did not have the same quality control procedures as authentic ZO Skin Health products, consumers did not receive the proper instructions related to the use of the product, and consumers did not receive the warranties that ZO Skin Health offers its customers through the authorized chains of distribution.

72.     Defendant's unauthorized sale of products bearing the ZO Medical Trademarks infringed on the ZO Medical Trademarks.

73.     Defendant's unauthorized use of the ZO Medical Trademarks infringed on the ZO Medical Trademarks.

74.     As a result, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

75.     Pursuant to 15 U.S.C. § 1117(a), ZO Skin Health is entitled to an award of attorneys' fees.

## SECOND CAUSE OF ACTION
### Trademark Dilution – ZO Trademark
### 15 U.S.C. § 1125(c)

76.     ZO Skin Health re-alleges the allegations set forth in paragraphs 1-66 above, and incorporates each allegation herein by reference.

77.    The ZO Trademark is valid and subsisting trademarks in full force and effect.

78.    ZO Skin Health is the owner of the ZO Trademark, which is a distinctive and widely recognized mark by the consuming public.  ZO Skin Health products, which bear the ZO Trademark, are sold and purchased at major retail outlets domestically and internationally as well as prescribed and recommended by physicians in the skin care industry.

79.    The ZO Skin Health is widely recognized as the designated source of goods bearing the ZO Trademark.

80.     Defendant's willful use of the ZO Trademark in connection with the unauthorized and illegal sale of its products diluted the ZO Trademark because the products sold by Defendant were not, in fact, genuine and authentic ZO Skin Health medical products.

81.    As a result of Defendant's unlawful actions, the reputation of the ZO Trademark was harmed and ZO Skin Health suffered immediate and irreparable injury.

82.    Further, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

83.     Pursuant to 15 U.S.C. § 1117(a), ZO Skin Health is entitled to an award of attorneys' fees.

## THIRD CAUSE OF ACTION
### Unfair Competition – ZO Medical Trademarks
### 15 U.S.C. § 1125(a)

84.     ZO Skin Health re-alleges the allegations set forth in paragraphs 1-66 above, and incorporates each allegation herein by reference.

85.     The ZO Medical Trademarks are valid and subsisting trademarks in full force and effect.

86.     Defendant willfully and knowingly used the ZO Medical Trademarks in commerce in connection with the sale and advertising of products without the consent of ZO Skin Health.

87.     The use of the ZO Medical Trademarks in connection with the unauthorized sale and advertising of products by Defendant was likely to cause confusion, cause mistake, or deceive an appreciable number of ordinarily prudent consumers as to the affiliation, connection, association, sponsorship or approval of ZO Skin Health products because it suggested that the products offered for sale by Defendant originated from, or were sponsored, authorized, or otherwise connected with ZO Skin Health.

88.     Defendant's unauthorized sale of products bearing the ZO Medical Trademarks, and unauthorized use of the ZO Medical Trademarks in advertising materially damaged the value of the ZO Medical Trademarks and caused significant damages to ZO Skin Health's business relations.

89.     Defendant's unauthorized sale of products bearing the ZO Medical Trademarks and unauthorized use of the ZO Medical Trademarks in advertising infringed on the ZO Medical Trademarks.

90.     As a result, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

91.     Pursuant to 15 U.S.C. § 1117(a), ZO Skin Health is entitled to an award of attorneys' fees.

**FOURTH CAUSE OF ACTION**
**Georgia Statutory Trademark Infringement – Ga. Code § 10-1-450**

92.     ZO Skin Health re-alleges the allegations set forth in paragraphs 1-66 above, and incorporates each allegation herein by reference.

93.     This claim arises under the laws of the State of Georgia.

94.     The ZO Medical Trademarks are valid and subsisting trademarks in full force and effect.

22

95.     ZO Skin Health is the owner of the ZO Medical Trademarks, which are distinctive and widely recognized marks by the consuming public.  ZO Skin Health products are sold and purchased at major retail outlets domestically and internationally as well as prescribed and recommended by physicians in the skin care industry.

96.     ZO Skin Health is widely recognized as the designated source of goods bearing the ZO Medical Trademarks.

97.      Defendant's knowing and willful use of the ZO Medical Trademarks in connection with the unauthorized and illegal sale of their products without ZO Skin Health's consent infringed on the ZO Medical Trademarks and was likely to cause confusion or deceive the consumer of the product as to its source of origin.

98.     The ZO Skin Health products sold by Defendant were not, in fact, genuine and authentic ZO Skin Health products.

99.     The Defendant also knowingly and willfully used the ZO Medical Trademarks in connection with their Internet listing as advertisements for the unauthorized sale of ZO Skin Health products.

100.   Defendant's unauthorized sale of products bearing the ZO Medical Trademarks and unauthorized use of said trademarks infringed on the ZO Medical Trademarks.

101.   As a result of Defendant's unlawful actions, the reputations of the ZO Medical Trademarks were harmed and ZO Skin Health suffered immediate and irreparable injury.

102.   Further, ZO Skin Health is entitled to liquidated damages under this statute for each and every infringement of the ZO Medical Trademarks.

## FIFTH CAUSE OF ACTION
### Common Law Trademark Infringement

103.   ZO Skin Health re-alleges the allegations set forth in paragraphs 1-66 above, and incorporates each allegation herein by reference.

104.   This claim arises under the laws of the State of Georgia.

105.   The ZO Medical Trademarks are valid and subsisting trademarks in full force and effect.

106.   ZO Skin Health is the owner of the ZO Medical Trademarks, which are distinctive and widely recognized marks by the consuming public.  ZO Skin Health products are sold and purchased at major retail outlets domestically and internationally as well as prescribed and recommended by physicians in the skin care industry.

107.   ZO Skin Health is widely recognized as the designated source of goods bearing the ZO Medical Trademarks.

108.   Defendant's knowing and willful use of the ZO Medical Trademarks in connection with the unauthorized and illegal sale of their products without ZO Skin Health's consent infringed on the ZO Medical Trademarks and was likely to cause confusion or deceive the consumer of the product as to its source of origin.

109.   The ZO Skin Health products sold by Defendant were not, in fact, genuine and authentic ZO Skin Health products.

110.   The Defendant also knowingly and willfully used the ZO Medical Trademarks in connection with their Internet listing as advertisements for the unauthorized sale of ZO Skin Health products.

111.   Defendant's unauthorized sale of products bearing the ZO Medical Trademarks and unauthorized use of said trademarks infringed on the ZO Medical Trademarks.

112.   As a result of Defendant's unlawful actions, the reputations of the ZO Medical Trademarks were harmed and ZO Skin Health suffered immediate and irreparable injury.

113.   Defendant's knowing and willful use of the ZO Medical Trademarks in connection with the unauthorized and illegal sale of ZO Medical products without ZO Skin Health's consent infringed on the ZO Medical Trademarks and

was likely to cause confusion or deceive the consumer of the product as to its source of origin.

## SIXTH CAUSE OF ACTION
### Georgia State Trademark Dilution – Ga. Code § 10-1-451

114.   ZO Skin Health re-alleges the allegations set forth in paragraphs 1-66 above, and incorporates each allegation herein by reference.

115.   The ZO Medical Trademarks and ZO Trademark are valid and subsisting trademarks in full force and effect.

116.   ZO Skin Health is the owner of the ZO Medical Trademarks, which are distinctive, and the ZO Trademark, which is distinctive and widely recognized by the consuming public.   ZO Skin Health products are sold and purchased at major retail outlets domestically and internationally as well as prescribed and recommended by physicians in the skin care industry.

117.   ZO Skin Health is widely recognized as the designated source of goods bearing the ZO Medical Trademarks and ZO Trademark.

118.   Defendant's willful use of the ZO Medical Trademarks and ZO Trademark in connection with the unauthorized and illegal sale of its products diluted the ZO Medical Trademarks and ZO Trademark because the products sold by Defendant were not, in fact, genuine and authentic ZO Skin Health products.

26

119.   As a result of Defendant's unlawful actions, ZO Skin Health's professional reputation was harmed and ZO Skin Health suffered immediate and irreparable injury.

120.   Further, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

**SEVENTH CAUSE OF ACTION**
**Uniform Deceptive Trade Practices Act – Ga. Cod. § 10-1-372**

121.   ZO Skin Health re-alleges the allegations set forth in paragraphs 1-66 above, and incorporates each allegation herein by reference.

122.   The ZO Medical Trademarks are valid and subsisting trademarks in full force and effect.

123.   Defendant willfully and knowingly used the ZO Medical Trademarks trademark in commerce in connection with the sale and advertising of products without the consent of ZO Skin Health.

124.   The use of the ZO Medical Trademarks in connection with the unauthorized sale and advertising of products by Defendant was likely to cause confusion or misunderstanding to an appreciable number of ordinarily prudent consumers as to the affiliation, connection, association, or certification of the ZO Skin Health products because it suggested that the products offered for sale by

Defendant originated from, or were sponsored, authorized, or otherwise connected with ZO Skin Health.

125.   By using the ZO Medical Trademarks in connection with the unauthorized sale and advertising of products Defendant also represented that the ZO Skin Health products offered for sale were subject to the same quality control products as authentic ZO Skin Health products, but they were not.   Nor did the consumer receive the proper instructions related to the use of the product or the warranties that ZO Skin Health offers its customers through the authorized chains of distribution.

126.   Defendant's unauthorized sale of products bearing the ZO Medical Trademarks, and unauthorized use of the ZO Medical Trademarks in advertising materially damaged the value of the ZO Medical Trademarks and caused significant damages to ZO Skin Health's business relations.

127.   Defendant's unauthorized sale of products bearing the ZO Medical Trademarks and unauthorized use of said trademarks in advertising infringed on the ZO Medical Trademarks.

128.   As a result, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

## EIGHTH CAUSE OF ACTION
### Common Law Unfair Competition Claim

129.   ZO Skin Health re-alleges the allegations set forth in paragraphs 1-66 above, and incorporates each allegation herein by reference.

130.   The ZO Medical Trademarks are valid and subsisting trademarks in full force and effect.

131.   Defendant willfully and knowingly used the ZO Medical Trademarks in commerce in connection with the sale and advertising of products without the consent of ZO Skin Health.

132.   The use of the ZO Medical Trademarks in connection with the unauthorized sale and advertising of products by Defendant was likely to cause confusion or misunderstanding to an appreciable number of ordinarily prudent consumers as to the source or sponsorship of the ZO Skin Health products because it suggested that the products offered for sale by Defendant originated from, or were sponsored, authorized, or otherwise connected with ZO Skin Health.

133.   Defendant's unauthorized sale of products bearing the ZO Medical Trademarks, and unauthorized use of the ZO Medical Trademarks in advertising materially damaged the value of the ZO Medical Trademarks and caused significant damages to ZO Skin Health's business relations.

134.   Defendant's unauthorized sale of products bearing the ZO Medical Trademarks and unauthorized use of said trademarks in advertising infringed on the ZO Medical Trademarks.

135.   As a result, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

**NINTH CAUSE OF ACTION**
**Fair Businesses Practices Act – Ga. Code § 10-1-393**

136.   ZO Skin Health re-alleges the allegations set forth in paragraphs 1-66 above, and incorporates each allegation herein by reference.

137.   The ZO Medical Trademarks are valid and subsisting trademarks in full force and effect.

138.   Defendant willfully and knowingly used unfair or deceptive acts or practices in connection with the sale and advertising of ZO Medical products.

139.   The use of the ZO Medical Trademarks in connection with the unauthorized sale and advertising of products by Defendant was likely to cause confusion or misunderstanding to an appreciable number of ordinarily prudent consumers as to the source, sponsorship, affiliation, connection, association, or certification of ZO Medical products because it suggested that the products offered

for sale by Defendant originated from, or were sponsored, authorized, or otherwise affiliated with ZO Skin Health.

140. By using the ZO Medical Trademarks in connection with the unauthorized sale and advertising of products, Defendant also represented that the ZO Medical products offered for sale were subject to the same quality control procedures as authentic ZO Medical products, which they were not. Nor did the consumer receive the proper instructions related to the use of the product or the warranties that ZO Skin Health offers its customers through the authorized chains of distribution.

141. Defendant's unauthorized sale of products bearing the ZO Medical Trademarks, and unauthorized use of said trademarks, materially damaged the value of the ZO Medical Trademarks and caused significant damages to ZO Skin Health's business relations.

142. Defendant's unauthorized sale of products bearing the ZO Medical Trademarks and unauthorized use of said trademarks infringed on the ZO Medical Trademarks.

143. As a result, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

## **PRAYER FOR RELIEF**

WHEREFORE, ZO Skin Health prays for relief and judgment as follows:

A.      Judgment in favor of ZO Skin Health and against Defendant, in an amount to be determined at trial, but not limited to, compensatory damages, statutory damages, liquidated damages, treble damages, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B.      Preliminary and permanent injunctions enjoining Defendant, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendant, and all of those in active concert and participation with Defendant (the "Enjoined Parties") as follows:

>    i)      Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, any and all ZO Skin Health products as well as any products bearing the ZO Trademark and any and all of the ZO Medical Trademarks including, but not limited to, Balatone, Brightenex, Cebatrol, Glycogent, Melamin, Melamix, Normacleanse, Oilacleanse, Retamax, Brightamax, Restoraclaim, and ZO Medical,
>
>    ii)     Prohibiting the Enjoined Parties from using the ZO Trademark and any and all of the ZO Medical Trademarks including, but not limited to, Balatone, Brightenex, Cebatrol, Glycogent, Melamin, Melamix, Normacleanse, Oilacleanse, Retamax, Brightamax, Restoracalm, and ZO Medical in any manner, including advertising on the Internet,

iii)   Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all ZO Skin Health products as well as any products bearing the ZO Trademark and any and all of the ZO Medical Trademarks including, but not limited to, Balatone, Brightenex, Cebatrol, Glycogent, Melamin, Melamix, Normacleanse, Oilacleanse, Retamax, Brightamax, Restoracalm and ZO Medical,

iv)   Requiring the Enjoined Parties to take all action to remove from any website or online storefront controlled by the Enjoined Parties any reference to any of ZO Skin Health's products, or the ZO Trademark and any and all of the ZO Medical Trademarks including, but not limited to, Balatone, Brightenex, Cebatrol, Glycogent, Melamin, Melamix, Normacleanse, Oilacleanse, Retamax, Brightamax, Restoracalm, and ZO Medical,

v)   Requiring the Enjoined Parties to take all action to remove from the Internet the ZO Trademark and the ZO Medical Trademarks on all other websites or storefronts under the Enjoined Parties' control from the Internet search engines (such as Google, Yahoo!, and Bing),

vi)   Requiring the Enjoined Parties to take all action within their power or authority to remove the ZO Trademark and the ZO Medical Trademarks from the Internet;

vii)   Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the ZO Trademark and the ZO Medical Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendant have sold bearing these trademarks, and

33

C. An award of attorneys' fees, costs, and expenses.

D. Such other and further relief as the Court deems just, equitable and proper.

Respectfully submitted,

*/s/ Angelina Kim Whitaker*
Roy A. Banerjee
Georgia Bar No. 035917
Angelina Kim Whitaker
Georgia Bar No. 370141
KUMAR, PRABHU, PATEL &
BANERJEE, LLC
1117 Perimeter Center West
Suite W 311
Atlanta, Georgia 30338
Phone: (678) 443-2220
Facsimile: (678) 443-2230
*Attorneys for Plaintiff*
rbanerjee@kppblaw.com
awhitaker@kppblaw.com

and

VORYS, SATER, SEYMOUR AND
PEASE LLP
Whitney C. Gibson, Esq. (*pro hac vice* pending)
James W. Kelly, II, Esq. (*pro hac vice* pending)
Adam C. Sherman, Esq. (*pro hac vice* pending)
301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, Ohio  45202

Phone:  (513) 723-4000
Facsimile:  (513) 852-7825
wcgibson@vorys.com
jwkelly@vorys.com
acsherman@vorys.com


## **JURY DEMAND**

Plaintiff ZO Skin Health demands trial by jury of all issues so triable.

/s/ Angelina Kim Whitaker
Roy A. Banerjee
Georgia Bar No. 035917
Angelina Kim Whitaker
Georgia Bar No. 370141
KUMAR, PRABHU, PATEL &
BANERJEE, LLC
1117 Perimeter Center West
Suite W 311
Atlanta, Georgia 30338
Phone: (678) 443-2220
Facsimile: (678) 443-2230
*Attorneys for Plaintiff*
rbanerjee@kppblaw.com
awhitaker@kppblaw.com